UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE LOZANO,<br><br>                Plaintiff,<br><br>v.<br><br>C.A. MARTINEZ FAMILY LIMITED PARTNERSHIP, a California Limited Partnership; AURELIA MARTINEZ; SANTO TOMAS, INC., a California Corporation; and Does 1-10,<br><br>                Defendants. | Case No.:  14cv331 BTM(DHB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendants C.A. Martinez Family Limited Partnership and Santo Tomas, Inc. ("Defendants"), have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3).  Plaintiff Enrique Lozano has filed a motion for summary judgment. For the reasons discussed below, Defendants' motion is **DENIED** and Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

On February 12, 2014, Plaintiff commenced this action.  Plaintiff is a paraplegic who uses a wheelchair for mobility and drives a van which is specially

equipped with a lift that deploys from the passenger side of his van. (Lozano Decl. ¶¶ 2, 5.) Plaintiff lives less than a mile from the Santo Tomas Swap Meet ("Swap Meet") at 1102 V.V. Williams Ave., Calexico, California (the "Property"). (Id. at ¶ 3.) Plaintiff enjoys thrift shopping and has been to the Swap Meet on more than 300 occasions. (Id. at ¶ 4.) He goes to the Swap Meet anywhere between two and ten times a month. (Id.)

Plaintiff explains that although there were dedicated handicap parking spaces at the Swap Meet, beginning in January 2013 through the filing of this lawsuit, "the signage and striping on the surface of the parking stalls themselves had faded to the point where they had disappeared entirely or only remnant of the paint remained." (Lozano Decl. at ¶ 7.) The faded lines and signage caused Plaintiff anxiety and difficulty because if he parks his van in a space without a clearly marked access aisle, he runs the risk of being blocked out of his vehicle if someone parks next to the van. (Id.)

On or about January 7, 2013, Plaintiff went to the Swap Meet to buy some used wheelchairs. (Lozano Decl. at ¶ 14.) On that day, Plaintiff could not find a handicap parking space with an available access aisle because vehicles were parked on the space where the access aisle was supposed to be. (Id.) Plaintiff claims that he encountered the problem of people parking on the area where an access aisle was supposed to exist at least once every single month during the

year prior to his lawsuit being filed (Plaintiff estimates 20 or more occasions). (Id. at ¶ 15.)

Since the filing of the lawsuit, the Swap Meet has repainted the parking spaces. (Lozano Decl. ¶ 17.) Plaintiff states that if Defendants keep up this level of maintenance of the parking spots, he does not anticipate having the same problems. (Id.)

Plaintiff's Complaint asserts causes of action for (1) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; (2) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code §§ 51-53; (3) violation of the California Disabled Persons Act, Cal. Civ. Code §§ 54-54.8; and (4) negligence. Plaintiff seeks injunctive relief compelling Defendant to comply with the ADA and UCRA as well as statutory damages under the UCRA in the amount of $4,000.

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) and/or 12(h)(3) on the ground that the Swap Meet has made modifications to the disabled parking spaces to address Plaintiff's concerns, making his claim for injunctive relief under

the ADA moot.[1]  However, the Court finds that Plaintiff's ADA claim is not moot because Defendants have not satisfied their burden of establishing that the ADA violations are not likely to recur.

Defendants contend that Plaintiff's ADA claim is moot because in March 2014, after receiving notice of Plaintiff's Complaint, Defendants refreshed the paint on all of the disabled-reserved parking spaces (16 parking spaces with eight access aisles).  (Gonzalez Decl. ¶ 22.)  The Swap Meet has also adopted new policies and procedures for maintenance of the disabled-reserved parking spaces to take into account the effect that sun-rays have on paint.  (Id. at ¶ 23.)[2]  Plaintiff conceded that after the parking spaces were repainted, they were "perfect." (Lozano Dep. (Def. Ex. A) at 128:14-17.)

---

[1] Defendants initially moved to dismiss Plaintiff's state claims as well, arguing that the Court would lack supplemental jurisdiction over them once the ADA claim was dismissed. However, in their Reply, Defendants acquiesced to the Court retaining supplemental jurisdiction over the state law claims.  At any rate, the Court denies Defendants' motion to dismiss the ADA claim.

[2] The policy submitted with the motion to dismiss (Def. Ex. G) states that every year, during the month of August, the handicap parking spaces will be inspected and will be repainted within 30 days if any of the markings are not clearly discernible or if the spaces were not repainted the previous year.  In opposition to Plaintiff's motion for summary judgment, Gonzalez declares that he actually caused the repainting of the handicap spaces to take place about twice a year since 2001. (Gonzalez Decl. [Doc. 18-1] ¶ 22.)  Effective 2015, the Swap Meet revised its written procedure again to require inspection of the handicap parking spaces every two months. (Def. Ex. G [Doc. 18-12].)

1    Although Defendants have taken steps in the right direction to assure that
2 the handicap parking spaces stay in compliance with the ADA, the Court cannot
3 conclude that Plaintiff's claim for injunctive relief is now moot.  A request for
4 prospective relief can be mooted by a defendant's voluntary discontinuance of
5 challenged activities if the defendant meets the "formidable burden" of
6 demonstrating that it is "absolutely clear the alleged wrongful behavior could not
7 reasonably be expected to recur."  Friends of the Earth, Inc. v. Laidlaw Envtl.
8 Servs., Inc., 528 U.S. 167, 190 (2000).

9    There are ADA access cases in which courts have held that the defendant's
10 voluntary compliance rendered moot the plaintiff's claim for injunctive relief.  For
11 example, in Tandy v. City of Wichita, 380 F.3d 1277 (10th Cir. 2004), a case in
12 which disabled passengers alleged that the fixed-route bus system was
13 intentionally inaccessible to people with disabilities, the Tenth Circuit found the
14 plaintiffs' request for prospective relief was mooted because all of Wichita Transit's
15 fixed bus routes had been equipped with lift accessible buses, there were no
16 remaining designated inaccessible bus routes, and bus drivers were instructed to
17 deploy lifts at all bus stops for disabled riders.  See also Kohler v. In-N-Out Burgers,
18 2013 WL 5315443 (C.D. Cal. Sept. 12, 2013) (holding that plaintiff's injunctive relief
19 claim under the ADA was moot with respect to remedied problems in connection
20 with the water closet stall, the side grab bar, the paper towel dispenser, and the

exit of the restroom); Wilson v. Pier 1 Imports (US), Inc., 439 F. Supp. 2d 1054 (E.D. Cal. 2006) (finding moot plaintiff's ADA claims regarding the lack of signs for each accessible parking space, the size of the accessible spaces, and the slope of the spaces).

On the other hand, there are cases where courts have found that the defendant's voluntary compliance with the ADA did not render the plaintiff's injunctive relief claim moot. In Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831 (N.D. Cal. Oct. 5, 2011), the court concluded that Taco Bell had failed to carry the heavy burden of showing that violations of the ADA would not occur in the future. Although Taco Bell had implemented policies regarding specific accessibility items that were supposed to be inspected, the court observed that Taco Bell "could change or rescind its policies at any time." See also Young v. District of Columbia Housing Authority, 31 F. Supp. 3d 90, 97 (D.D.C. 2014) (explaining that the defendant's implementation of an electronic notification system, which would alert staff if a client had requested an ASL interpreter, was "not the sort of permanent physical change or change that inherently cannot be undone that courts have found to foreclose a reasonable chance of recurrence."); Feldman v. Pro Football, Inc., 419 Fed. Appx. 381 (4th Cir. 2010) (concluding that because defendants could easily stop providing captioning at football games, the defendants had not

discharged their heavy burden of showing no reasonable expectation that they would repeat their alleged wrongs).

In this case, Defendants have not satisfied their heavy burden of showing that the ADA violations at issue are not likely to recur again in the future. Defendants implemented new policies regarding inspecting and repainting the accessible parking spaces after Plaintiff filed this lawsuit. "[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit" is relevant to the voluntary cessation analysis. Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007). The Court notes that Defendants initially constructed ADA compliant parking spaces in 2001, after settling an ADA lawsuit brought by Ruben Deanda, also represented by Potter Handy, LLP. (Gonzalez Decl. ¶¶ 3-6.)

Furthermore, there is no guarantee that Defendants won't just fail to follow through with their new policy of vigilantly inspecting the accessible parking spaces. Unlike cases where defendants would have to undo structural alterations to violate the ADA or would have to actively implement different policies, here, Defendants could run afoul of the ADA in the future by mere inaction and allowing the paint on the accessible spaces to fade. Indeed, even though Defendants claim that their previous practice was to paint the spaces about twice every year, as shown in the pictures taken by Plaintiff's investigator, on February 19, 2013, the condition of the

accessible parking spaces had deteriorated to the point that the wheelchair logos, striped access aisles, painted lines, and wording had either faded completely away or were barely visible.  (Willis Decl. ¶¶ 5-10.)

Given the history of Defendants' failure to take proactive steps to provide accessible parking spaces in compliance with the ADA and the ease with which the parking spaces could fall into non-compliance again, the Court concludes that Plaintiff's claim for injunctive relief is not moot.  Therefore, Defendants' motion to dismiss is **DENIED**.

## B. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on his first cause of action for violation of the ADA and second cause of action under the UCRA.[3]  Plaintiff seeks (1) an order from the Court requiring Defendants to implement and carry out policies and procedures to maintain the accessible parking spaces at the Santo Tomas Swap Meet so that they remain compliant with the 2010 Access Standards; and (2) judgment in favor of Plaintiff for $4,000.

---

[3] Plaintiff requests dismissal of his third cause of action for violation of the California Disabled Persons Act and fourth cause of action for negligence.  The Court grants Plaintiff's request and dismisses these claims.

### 1. Title III, ADA Claim

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on an ADA claim, the plaintiff must establish: (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his or her disability. Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

Plaintiff cannot walk and uses a wheelchair for mobility. (Lozano Decl. ¶ 2.) Accordingly, Plaintiff is "disabled" within the meaning of the ADA, 42 U.S.C. § 12102(a)(1)(A).

The Swap Meet is a service establishment that qualifies as a place of public accommodation. 42 U.S.C. § 12181(7)(E). Defendant Santo Tomas, Inc., is the lessee and operator of the Property. (Answer ¶ 2.) Defendant C.A. Martinez Family Limited Partnership is the owner of the Property. (Id. at ¶ 3.)

The third element – that the plaintiff was denied public accommodations on the basis of disability – is satisfied if the defendant failed to remove architectural

barriers where such removal was readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA Accessibility Guidelines ("ADAAG") provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011). Therefore, "if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." Id. at 947.

Under both the 1991 and 2010 ADAAG standards, any business that provides parking spaces must provide handicap parking spaces conforming to the Guidelines' specifications. 28 C.F.R. pt. 36, App. D, § 4.1.2(5); 36 C.F.R. pt. 1191, App. C, § 208. Under the 1991 standards, one in every eight accessible spaces, but not less than one, shall be designated "van accessible." 28 C.F.R. pt. 36, App. D, §4.1.2(5)(b). Under the 2010 standards, at least one in every six accessible parking spaces shall be a van parking space. 36 C.F.R. pt. 1191, App. C § 208.2.4. Van accessible stalls at least 96 inches wide but less than 132 inches wide must have a 96-inch wide access aisle. 28 C.F.R. pt. 36, App. D, § 4.1.2(5)(a), (b); 36 C.F.R. pt. 1191, App. D § 502.2.

The advisory note to § 502.3.3 of the 2010 Standards states that the method and color of marking may be addressed by State or local laws or regulations.

Under the California Building Code, each accessible car and van space shall be marked with an International Symbol of Accessibility measuring at least 36 inches wide by 36 inches high. 2013 California Building Code § 11B-502.6.4. Access aisles are required to be marked with a blue painted borderline around their perimeter and hatched lines within the blue borderlines. Id. at § 11B-502.3.3. The words "No Parking" must be painted on the surface within each access aisle in white letters a minimum of 12 inches in height. Id.

"A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 36.211(a). "This section recognizes that it is not sufficient to provide features such as accessible routes, elevators, or ramps, if those features are not maintained in a manner that enables individuals with disabilities to use them." 28 C.F.R. pt. 36, App. C § 36.211.

Plaintiff has submitted evidence that the painted surface of the accessible parking spots had faded to the point that the markings were nonexistent or barely visible. (See Exhibits to Willis Decl.) Although the photographs were taken by Plaintiff's investigator on February 19, 2013, Plaintiff declares that the photographs accurately depict the condition of the parking spaces he encountered on the dates from January 2013 through the filing of the lawsuit. (Lozano Decl. ¶ 8.)

The evidence establishes that Plaintiff encountered an architectural barrier that impaired Plaintiff's full and equal access of the Swap Meet. Removal of the architectural barrier was readily achievable, as evidenced by the corrective measures Defendants took after the Complaint was filed. Therefore, Plaintiff is entitled to summary judgment on his ADA claim. Plaintiff's claim for injunctive relief is not moot for the reasons discussed in connection with Defendants' motion to dismiss.

### 2. Unruh Civil Rights Act Claim

Plaintiff seeks statutory damages under the Unruh Civil Rights Act ("UCRA"). Under the UCRA, the plaintiff is ordinarily entitled to an award of statutory damages of no less than $4,000 for each offense. Cal. Civ. Code § 52(a). Plaintiff requests a single statutory minimum penalty assessment of $4,000.

The UCRA incorporates the ADA, and a violation of the ADA is actionable under California law. Cal. Civ. Code § 52(f). To recover statutory damages, a plaintiff must show that a particular barrier personally affected him and denied him full and equal access. Moeller v. Taco Bell Corp., 2012 WL 3070863, at *4 (N.D. Cal. 2012). "A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced

difficulty, discomfort, or embarrassment because of the violation." Cal. Civ. Code § 55.56(c).

Although Plaintiff generally was not deterred from going to the Swap Meet, he experienced discomfort and anxiety because on a number of occasions, he witnessed people parking on the access aisles, causing him to worry that when he parked in a van accessible space, someone would end up parking in the access aisle and blocking him out of his vehicle. (Lozano Decl. ¶¶ 7, 15.) On January 7, 2013, Plaintiff was unable to find a handicap parking space with a useable access aisle because vehicles were parked on the access aisles. (Id. at ¶ 14.)

Defendants argue that the Court should deny summary judgment because there are issues concerning Plaintiff's credibility. Defendants request the Court to take judicial notice of a state court decision in a disability access lawsuit brought by Plaintiff. (Def. RJN [Doc. 18-4].) The Court grants that request. In this decision, the state court found that Plaintiff's claims that he patronized certain businesses were not credible. (Def. Ex. J.) Defendants argue that they should have the opportunity to impeach Plaintiff's testimony in this case.

However, "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F2d 95, 97 (9th Cir. 1983); see also Williams v. County of Marin, 2004 WL 2002478, at *7 (N.D. Cal. Sept. 8,

13

14cv331 BTM(DHB)

2004) ("Nor is it sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence.") Defendants are required to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Defendants have failed to do so.

In their Reply, Defendants argue that even if Defendants are subject to liability, the statutory damages should be reduced under Cal. Civ. Code § 55.56(f)(1)(A). Section 55.56(f)(1)(A) provides that a defendant's liability for statutory damages is reduced to a minimum of $1,000 for each offense if the defendant shows that it has corrected all construction-related violations that are the basis of a claim within 60 days of being served with the complaint, and "[t]he structure or area of the alleged violation was determined to be 'CASp-inspected' or 'meets applicable standards' and, to the best of the defendant's knowledge, there were no modifications or alterations that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim *that were completed or commenced between the date of that determination and the particular occasion on which the plaintiff was allegedly denied full and equal access*." (Emphasis added.)

It is clear from the language of the statute that the CASp inspection must have occurred *prior* to the occasion when the plaintiff was denied full and equal access. The Property, including the parking spaces, were inspected by a Certified

1  Access Specialist on September 25, 2014, after this lawsuit was filed. (Supp.

2  Gonzalez Decl. [Doc. 21-1] ¶ 9.) Therefore, Defendants do not qualify for a

3  reduction of statutory damages.

4  The Court grants Plaintiff's motion for summary judgment on his UCRA

5  claim. Plaintiff is entitled to the minimum statutory damages of $4,000.

6

7 ### III. CONCLUSION

8  For the reasons discussed above, Defendants' motion to dismiss [Doc. 15]

9  is **DENIED** and Plaintiff's Motion for Summary Judgment [Doc. 16] is **GRANTED**.

10 The Court grants summary judgment in favor of Plaintiff on Plaintiff's first cause of

11 action for violation of the ADA and second cause of action for violation of the Unruh

12 Civil Rights Act.

13 The Court grants Plaintiff's request to dismiss his third cause of action for

14 violation of the California Disabled Persons Act and fourth cause of action for

15 negligence. These claims are **DISMISSED**.

16 Because there is no just reason for delay, the Court orders the Clerk to enter

17 final judgment as follows:

18     1) Judgment is entered in favor of Plaintiff and against

19     Defendants Santo Tomas, Inc., and C.A. Martinez Family Limited

20     Partnership, jointly and severally, in the amount of $4,000.

2) The Court **ORDERS** Defendants Santo Tomas, Inc., and C.A. Martinez Family Limited Partnership to maintain the accessible parking spaces at 1102 V.V. Williams Ave., Calexico, California, so that they remain compliant with the ADA and applicable ADAAG standards.

The Court also orders Plaintiff to show cause why his claims against defendant Aurelia Martinez should not be dismissed.  The proof of service of the summons and complaint shows that the documents were left with a Susana Martinez who stated that Auerlia Martinez is deceased.  [Doc. 6.]  Ms. Martinez has not filed an answer or appeared in this action, and Plaintiff has not requested an entry of default against her.  Plaintiff's response to this OSC is due within 10 days of the entry of this Order.

**IT IS SO ORDERED.**

Dated:  September 8, 2015

_____
Barry Ted Moskowitz, Chief Judge
United States District Court